UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| GARY HOUCHENS, *et al.*, | ) | |
| --- | --- | --- |
| Plaintiffs, | ) ) ) | Civil No. 3:20-cv-00006-GFVT |
| v. | ) ) | **OPINION** |
| ANDREW G. BESHEAR, *et al.*, | ) ) | **&** **ORDER** |
| Defendants. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Elections matter. When Governor Beshear was running for governor he announced that he intended to abolish the State Board of Education and create a new board with new members. After he was elected, he did just that.

To the Board members removed, this seems unfair. After all, many had time left on their four year appointments and no doubt a desire to continue to serve. So, many of those removed have now brought this litigation asking a federal court to put an immediate stop to what they honestly believe is a terrible idea. They may be right, but the relief they seek is not actionable in this forum. As explained below, the Governor's actions are not contrary to federal law. For that reason, the Plaintiffs are unlikely to succeed on the merits of this case and their request for a preliminary injunction will be DENIED.

**I**

Plaintiffs are previously appointed Board Members of the Kentucky Board of Education. [R. 1-5 at 7.] After taking office as governor on December 10, 2019, Governor Andy Beshear issued Executive Order 2019-002. [*Id*. at 13.] This Executive Order abolished the Kentucky

Board of Education created by KRS § 156.029, eliminating the position of any board member serving at that time. [*Id*. at 13–14.] Next, Governor Beshear, by Executive Order 2019-002, created a new Board and appointed eleven new members, which are named Defendants to this action. [R. 12 at 2.] The Executive Order also appointed an active teacher, the Secretary of the Education and Workforce Development Cabinet, and the President of the Council on Postsecondary Education as *ex officio* nonvoting members. [*Id*.]

The next day, Plaintiffs and three additional previous board members filed a Complaint against Governor Beshear and Lieutenant Governor and Secretary of Education and Workforce Development Jacqueline Coleman in Franklin Circuit Court. [*Id*. at 2–3.] In the state court action, Plaintiffs argued that Executive Order 2019-002 was a violation of the Kentucky Constitution, and sought to have the Executive Order declared void. [*Id*. at 3.] Plaintiffs specifically moved for injunctive relief, asking the Court to enjoin the new Board created under that Order from taking any action. [*Id*.] Plaintiffs also moved for a temporary restraining order and a temporary injunction. [*Id*.] The Franklin Circuit Court heard oral argument from both parties and ultimately denied all motions, "holding Plaintiffs had failed to demonstrate a substantial question given the Supreme Court's recent holding in *Beshear v. Bevin*, 575 S.W.3d 673 (Ky. 2019)." [*Id*.]

One day later, Plaintiffs moved for emergency interlocutory relief from the Kentucky Court of Appeals. This was denied for the same reasons identified by the lower court. [*Id*.] On the same day, Plaintiffs appealed the order denying emergency relief to the Kentucky Supreme Court. [*Id*.] The Kentucky Supreme Court unanimously denied Plaintiffs' motion. [*Id*.]

During this time, on December 12, the new Board held a special meeting where its members were sworn into office and the Board announced the voluntary resignation of the

2

Commissioner of Education. [*Id.*] Following the resignation, the Board named an interim Commissioner and started to conduct a national search for a new Commissioner. [*Id.*] Thereafter, the Board has continued to hold meetings. [*Id.*]

After the Kentucky courts denied Plaintiffs' motion for injunctive relief, Defendants moved to dismiss the state court complaint, and scheduled a hearing on January 15. [*Id.*] Thereafter, Plaintiffs sought to continue the hearing after a change of counsel, and the hearing was rescheduled for January 29. [*Id.* at 4.] However, before the hearing, Plaintiffs voluntarily dismissed the state court action on January 17. [*Id.*]

On the same day, a new group of Plaintiffs consisting of the previous Board members filed the instant action against Defendants pursuant to 42 U.S.C. § 1983. [R. 1.] First, Plaintiffs allege that the Governor's actions consist of procedural and substantive Due Process violations because he fired the previous Board members without cause. [*Id.* at 16–20.] Plaintiffs also seek a declaration from this Court on the constitutionality of KRS § 12.028 and whether it violates the separation of powers doctrine in the Kentucky Constitution. [*Id.* at 21.] Finally, Plaintiffs seek a "declaration of the constitutionality of Governor Beshear's action in suspending [KRS] 156.029 and [KRS] 63.080 when he fired the Plaintiffs without cause as required by the state constitution." [*Id.* at 25.]

Seventeen days later, on February 3, Plaintiffs filed a Motion for an Emergency Preliminary Injunction. [R. 7.] Plaintiffs seek "to enjoin those appointed to [the] State Board of Education in Beshear Executive Order 2019-002 from taking any further actions until an adjudication of the merits of this action." [*Id.* at 1.] This Court ordered a response from the Defendants and held a hearing on February 11. [R. 16.]

# II

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (finding that issuance of a preliminary injunction "involv[es] the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it")). To issue a preliminary injunction, the Court must consider: 1) whether the movant has shown a strong likelihood of success on the merits; 2) whether the movant will suffer irreparable harm if the injunction is not issued; 3) whether the issuance of the injunction would cause substantial harm to others; and 4) whether the public interest would be served by issuing the injunction. *Overstreet,* 305 F.3d at 573 (citations omitted).

A court need not consider all of the factors if it is clear that there is no likelihood of success on the merits. *See Amoco Protection Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 n. 12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."). The Court of Appeals clarified that, "[w]hen a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits often will be the determinative factor." *City of Pontiac Retired Employees Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir.2012)). However, even if the plaintiff is unable "to show a strong or substantial probability of ultimate success on the merits" an injunction can be issued when the plaintiff "at least shows serious questions going to the merits and irreparable harm

which decidedly outweighs any potential harm to the defendant if an injunction is issued." *In re Delorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).

## A

Standing is a threshold inquiry in every federal case which may not be waived by the parties. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975); *Planned Parenthood Ass'n of Cincinnati, Inc. v. Cincinnati*, 822 F.2d 1390, 1394 (6th Cir. 1987). "To satisfy the 'case' or 'controversy requirement' of Article III, which is the 'irreducible constitutional minimum' of standing, a plaintiff must, generally speaking, demonstrate that he has suffered an 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997) (citations omitted). Further, "a plaintiff must also establish, as a prudential matter, that he or she is the proper proponent of the rights on which the action is based." *Haskell v. Washington Twp.*, 864 F.2d 1266, 1275 (6th Cir. 1988) (citations omitted).

Here, the Plaintiffs have suffered an injury in fact due to their alleged lack of due process prior to their removal as board members. The initial standing considerations require Plaintiffs' injury be both particularized and concrete. *Spokeo v. Robins*, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-181, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)). Both requirements are met here. "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (internal quotation marks omitted). The Plaintiffs are previous Board members that are personally affected by the Governor's actions in that they no longer hold their positions as Board members and were terminated without cause prior to end of their terms. Further, a "concrete" injury is

a *de facto* injury that actually exists. *Id.* The Plaintiffs have suffered a concrete injury as a result of Kentucky's law and the Governor's actions because, if they succeed on the merits, they will have actually, and not just theoretically, been denied due process rights prior to the termination of their positions.

The remaining Article III and prudential standing requirements are also satisfied in this case. The Plaintiffs' injury in fact is fairly traceable to the Defendant Governor Beshear, who is responsible for issuing the Executive Order that eliminated the previous Board. The injury is redressable, should the Court find the Governor's actions unconstitutional. And finally, the Plaintiffs are the appropriate litigants. *Haskell*, 864 F.2d at 1275. They are directly affected by the Executive Order issued by the Governor pursuant to a Kentucky statute, and, as members of the previous Board, they have suffered "an injury peculiar to them and not common to all members of the public." *Green Party of Tennessee v. Hargett*, 767 F.3d 533, 544 (6th Cir. 2014) (internal quotations omitted). The Court, therefore, is satisfied that the Plaintiffs have standing to bring the instant action, and the Court has the power to decide this case.

**B**

The determinative question at this preliminary stage is "whether the movant has shown a strong likelihood of success on the merits." *Overstreet,* 305 F.3d at 573. The initial issue before the Court is not whether the Defendants' actions violated Kentucky state law, but whether the case presents a question of federal constitutional law. Plaintiffs argue that this Court has "federal question" jurisdiction over this matter pursuant to 28 U.S.C. § 1331 which provides that this Court "shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." [R. 1-5 at 4.]

Therefore, this Court must review Plaintiffs' § 1983 claims to determine whether they

6

give the Court federal question jurisdiction over this case. The Court must determine whether Plaintiffs' claims "arise under" federal law. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 7, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003). "'A suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution.'" *Id.* (quoting *Louisville & Nashville R. Co. V. Mottley*, 211 U.S. 149, 152, 29 S. Ct. 42, 53 L. Ed. 126 (1908)). A civil rights action under 42 U.S.C. § 1983 for alleged violations of the Fourteenth Amendment is certainly one that is based upon the laws of the United States. However, that does not end the Court's inquiry.

A claim under a federal statute does not give the court federal question jurisdiction if it is "so attenuated and unsubstantial as to be absolutely devoid of merit." *Hagans v. Lavine*, 415 U.S. 528, 537, 94 S. Ct. 1372, 39 L. Ed. 2d 577 (1974); *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) ("[A] district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion."). "To be obviously devoid of merit, an alleged constitutional claim might represent an attempt to obtain federal question jurisdiction by the mere assertion of a frivolous connection between the constitution and the subject matter of the dispute, or the alleged claim might simply be immaterial to the real controversy." *Garvin v. Rosenau*, 455 F.2d 233, 239-40 (6th Cir. 1972) (citing *Bell v. Hood*, 327 U.S. 678, 66 S. Ct. 773, 90 L. Ed. 939 (1946)).

Plaintiffs state that this Court has subject matter jurisdiction because they have claimed violations of their constitutional right to substantive and procedural due process of law under the Fourteenth Amendment to the U.S. Constitution. [R.1-5 at 4.] They are right about the

7

jurisdictional foundation; but wrong about the constitutional law. Plaintiffs have not asserted a viable claim under the Fourteenth Amendment because they have no property or liberty interest in an appointed and voluntary state office.[1]

**1**

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that "No State shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Plaintiffs primarily allege failure by the Defendants to provide adequate procedural and substantive due process when the Governor abolished the entire Board, ultimately terminating all members before their term was completed. [R. 7 at 7–8.] As the Sixth Circuit explained in *Howard v. Grinage*, 82 F.3d 1343, 1350 (6th Cir. 1996), "substantive due process prohibits the government's abuse of power or its use for the purpose of oppression, and procedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards."

**a**

The procedural component of the Due Process Clause protects rights created by state law and guarantees that no significant deprivation of life, liberty or property will take place until notice has been provided and the individual has a meaningful opportunity to be heard. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). In *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989), the United States Supreme Court stated:

> We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State, *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571, 92 S. Ct. 2701, 2706, 33 L.Ed.2d

---

[1] All Defendants have moved to dismiss this action pursuant to various reasons. A separate order will be issued by this Court to address each of those pending Motions.

> 548 (1972); the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient, *Hewitt v. Helms*, 459 U.S. at 472, 103 S.Ct. at 871, 74 L. Ed. 2d 675. The types of interests that constitute "liberty" and "property" for Fourteenth Amendment purposes are not unlimited; the interest must rise to more than "an abstract need or desire," *Board of Regents v. Roth*, 408 U.S. at 577, 92 S. Ct. at 2709, and must be based on more than "a unilateral hope," *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 465, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981). Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it.

*Thompson*, 490 U.S. at 460.

A public employee is entitled to procedural due process—including the opportunity for a hearing—and substantive protections if he stands to lose a constitutionally protected property or liberty interest. *See Loudermill*, 470 U.S. at 538. Such a property interest arises from a "legitimate claim of entitlement" to continuing employment. *Roth*, 408 U.S. at 577. Thus, in order to establish due process protection, a "plaintiff must, as a threshold matter, establish that he had a protected property interest in his continued employment entitling him to due process protection." *Blazy v. Jefferson Cty. Reg'l Planning Comm'n*, 438 F. App'x 408, 411–12 (6th Cir. 2011) (citations omitted).

Analysis of state law determines whether an employee possesses a property interest in continued employment. *See Roth*, 408 U.S. at 578 ("[Property interests] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlements to those benefits.") Moreover, a "property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances." *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir.2004) (citations omitted). In this case, the Court must look to Kentucky law and to the terms of the Plaintiffs' employment to determine whether members had a "legitimate expectation of continued employment." *Johnston—Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir. 1990).

9

But the Plaintiffs here are not really employees. Instead, they are political appointees and more akin to public officers. The Supreme Court has explicitly held that public officers do not have a property interest in the positions they occupy. *Taylor v. Beckham*, 178 U.S. 548, 20 S.Ct. 890, 44 L. Ed. 1187 (1900). The case involved an election for Kentucky's governor and lieutenant governor. *Id*. After the Republican candidates had been declared the winner, the Democratic candidates contested the results and were later declared the winners. *Id*. When the Republican candidates refused to surrender their positions, the Democratic lieutenant governor candidate filed suit. *Id*. The Republicans argued that depriving them of their elected offices would be depriving them of "their property without due process of law." *Id*. at 557. Kentucky's highest state court held that the case did not assert a Fourteenth Amendment claim because the right to hold office was not a property right. *Id*. at 575.

The Supreme Court declined to exercise jurisdiction over the case, stating that "[t]he view that public office is not property has generally been entertained in this country." *Id*. at 576. The decisions are numerous to the effect that public offices are mere agencies or trusts, and not property as such. Nor are the salary and emoluments property, secured by contract, but compensation for services actually rendered." *Id*. at 577. The fact that

> a constitution may forbid the legislature from abolishing a public office or diminishing the salary thereof during the term of the incumbent [does not] change its character or make it property. True, the restrictions limit the power of the legislature to deal with the office, but even such restrictions may be removed by constitutional amendment. In short, generally speaking, the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right.

*Id*. The Supreme Court later reaffirmed its holding in *Taylor*, stating that "[m]ore than forty years ago this Court determined that an unlawful denial by state action of a right to state political office is not a denial of a right of property or of liberty secured by the due process clause. . . we reaffirm [that decision] now." *Snowden v. Hughes,* 321 U.S. 1, 7, 64 S. Ct. 397, 88 L. Ed. 497

10

(1944).

Plaintiffs complain that they were removed from office and deprived of their positions as Board members without cause. They assert the Governor's actions through Executive Order 2019-002 deprived them of a property interest protected under longstanding statutes, *i.e.* the protection that "a board member shall only be removed for cause," under KRS § 156.029(2), and KRS § 63.080(2)(b), which states "members of the Kentucky Board of Education…shall only be removed except for cause." [R. 7 at 4.] In essence, the Board members believe that state law has granted them certain procedural rights.

However, Governor Beshear did not simply remove the members from a state office. Rather, the Governor exercised his authority under KRS § 12.028 to reorganize the state government in a manner that abolished their state offices. [R. 12 at 12.] This power is conferred to the Governor by the General Assembly and was recognized as a lawful executive function by the Kentucky Supreme Court. *See Beshear v. Bevin*, 575 S.W.3d 673 (Ky. 2019). This statute provides that the Governor may temporarily reorganize "organizational units and administrative bodies" when the General Assembly is not in session "to achieve greater economy, efficiency, and improved administration …." KRS § 12.028(2). Such reorganization can include "the creation, alteration or abolition of any organizational unit or administrative body and the transfer of functions, personnel, funds, equipment, facilities, and records from one (1) organizational unit or administrative body to another." KRS § 12.028(1). Therefore, since the Governor abolished the entire Board, the statutory "cause" requirement was not implicated.

Maybe the protected constitutional interest is related to an expanded liberty interest of the former Board members. That seems to be another argument Plaintiffs make. Protected liberty interests "may arise from two sources — the Due Process Clause itself and the laws of the

states." *Thompson*, 490 U.S. at 459 (internal quotation and citation omitted). "Only if [I] find a protected interest do [I] ask whether the deprivation of that interest was in accordance with due process." *Tony L. By & Through Simpson v. Childers*, 71 F.3d 1182, 1185 (6th Cir. 1995) (citing *Thompson, supra*, 490 U.S. at 460)).

In *United of Omaha Life Insurance Co. v. Solomon*, 960 F.2d 31, 34 (6th Cir. 1992), the Sixth Circuit discussed the parameters of a protected liberty interest:

> A protected liberty interest goes beyond freedom from bodily restraint; it includes the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge and to enjoy generally those privileges long recognized as essential to the orderly pursuit of happiness by free men. *Board of Regents v. Roth*, 408 U.S. 564, 572, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). Although this definition of liberty has been somewhat narrowed by later Supreme Court cases, *see, e.g., Paul v. Davis,* 424, U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976), it is recognized that the due process clause forbids arbitrary deprivation of liberty "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Goss v. Lopez*, 419 U.S. 565, 574, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975) (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S. Ct. 507, 27 L. Ed. 2d 515 (1971)).

"[A] person's reputation, good name, honor and integrity are among the liberty interests protected by the due process clause." *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989). However, reputation alone, apart from some more tangible interests such as employment, is neither liberty nor property sufficient to invoke the procedural protections of the due process clause. *Paul,* 424 U.S. at 701. In regard to reputation in a volunteer context, courts have refused to find such a protected interest where the plaintiff has failed to show lost opportunity for employment. *Baker v. McDaniel*, 2009 WL2710099, at *4 (E.D. Ky. Aug. 24, 2009). And recall that "unlawful denial by state action of a right to state political office is not a denial of a right …of liberty secured by the due process clause." *Snowden*, 321 U.S at 6. Ultimately, Plaintiffs have not identified a particular liberty interest that has been deprived by Defendants in this matter and the Court cannot conclude that one exists.

**b**

What about substantive due process rights? The fact that Plaintiff was not entitled to notice and an opportunity to be heard does not necessarily foreclose a substantive due process claim. The substantive component of the Due Process Clause protects fundamental rights created by the United States Constitution.

Fundamental rights are those specifically guaranteed by the United States Constitution and those rights that are "implicit in the concept of ordered liberty." *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S. Ct. 149, 82 L. Ed. 288 (1937). These generally include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 117 S. Ct. 2302, 138 L. Ed. 2d 772 (1997) (internal citations omitted). Substantive due process rights have been specifically defined by the United States Supreme Court, and do not include the right to maintain employment, public or otherwise. *See Seal v. Morgan*, 229 F.3d 567, 574-575 (6th Cir. 2000).

In *Ramsey v. Board of Education of Whitley County, Kentucky*, 844 F.2d 1268 (6th Cir. 1988), and in *Charles v. Baesler*, 910 F.2d 1349 (6th Cir. 1990), the Court held that a breach of contract by a public employer does not give rise to a claim by its employee under § 1983 for a denial of substantive due process. Moreover, in *Sutton v. Cleveland Board of Education*, 958 F.2d 1339, 1351 (6th Cir. 1992), the Court held that a claim by a public employee for improper discharge from employment cannot be brought under the substantive due process component even though the employment contract provides that the employee could only be discharged for just cause. As noted, if those rights do not exist for employees, they certainly do not exist for

13

political appointees. Therefore, Plaintiffs' substantive due process claim lacks merit as a matter of law.

## 2

This case broadly rests on whether there exists a substantial likelihood of success on the merits. But neither can Plaintiffs satisfy their burden that without judicial action they would suffer immediate and irreparable harm. This is so because as explained, the Governor acted under the ability to temporarily reorganize Kentucky boards and agencies. KRS § 12.028. In theory, the previous Board members are able to be reinstated if the General Assembly acts legislatively. *See e.g.*, KRS § 12.028(5). There is simply no legitimate claim that either party would be substantially harmed by the issuing of an injunction.

Finally, as there is not a strong likelihood of success on the merits, this Court cannot make the assumption that Plaintiffs and other members of the public would be better served by ultimately estopping further action by the current Board members. The former Board members might think so; but the current members surely would not.

## 3

The only remaining claims seek a declaration that the state laws in question in this case violate state law. To the extent a federal court even considers such claims, it does so by following state law. And here, the Kentucky Supreme Court has already held that KRS § 12.028 does not violate Kentucky's constitutional separation of powers. *See Beshear*, 575 S.W.3d at 681–84. Plaintiffs argue that *Beshear v. Bevin* does not apply in this case because the facts are clearly distinguishable since the former Governor did not use the challenged statute to cause any members of the Board to lose their position. [R. 17 at 1–2.]

However, Attorney General Beshear's constitutional challenge to the statute in that case

was exactly the same as the one raised by the Plaintiffs here. Plaintiffs argued that KRS § 12.028 violated Kentucky's separation of powers doctrine by unconstitutionally shifting legislative power from the General Assembly to the Governor. *Beshear*, 575 S.W.3d at 681. The Kentucky Supreme Court ultimately rejected this claim and held that "neither KRS § 12.028 nor [the executive order] constitutes an unconstitutional delegation of legislative power." *Id*. at 684. The Court explicitly stated, "KRS § 12.028, which allows the Governor to change the makeup and functions of those boards—even going so far as abolishing existing boards and creating new ones—is a grant of legislative authority to the executive department." *Id*. at 682. While the Supreme Court recognized that "[t]here may be a point" at which a Governor's particular use of the statute violates the [state] Constitution, the statute itself is not facially invalid, which is exactly the same issue Plaintiffs are asking this Court to decide. *Id*. Therefore, *Beshear v. Bevin* is the authoritative precedent on the issue of whether KRS § 12.028 is facially constitutional, ultimately allowing the Governor to abolish and reconstruct education boards in Kentucky. [2]

### III

Elections matter because they allow the elected to make governing choice – choices that have policy and personal consequences. That can be disappointing for those who desire to serve or who believe in a particular policy. But, absent a finding of a federal constitution or statutory violation, the remedy does not rest in the hands of a federal judge. The remedy is found at the

---

[2] The Governor also avers that the Court should abstain from exercising jurisdiction in this case pursuant to the *Pullman* abstention doctrine. Under *Pullman*, a federal court must abstain from hearing "cases in which the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716-17, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996) (citing *Pullman*, 312 U.S. 496, 61 S. Ct. 643, 85 L. Ed. 971. However, the Court believes the factual predicate here is not traditionally the context where the abstention doctrine is implicated since there are no unsettled questions of state law pending in this matter.

ballot box.

The Court remains unpersuaded that this case presents one of the extraordinary circumstances that require the issuance of a preliminary injunction since the Plaintiffs have not demonstrated a strong likelihood that they will succeed on the merits. "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet,* 305 F.3d at 573. Here, the Plaintiffs have failed to do so. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Plaintiffs' Motion for Preliminary Injunction [**R. 7**] is **DENIED**.

This the 27th day of February, 2020.

Gregory F. Van Tatenhove
United States District Judge