UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| GARY HOUCHENS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 3:20-cv-00006-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| ANDREW G. BESHEAR, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This Court recently denied Plaintiffs' motion for preliminary injunction which was based on the same arguments and facts as those presented in the pending motions to dismiss. At the preliminary injunction stage, courts try to anticipate future success on the merits. Here, Plaintiffs did not demonstrate a strong likelihood that they would succeed on the merits because the relief they seek is not actionable in this forum. Now, the Court is asked to consider the same arguments again in the context of a motion to dismiss. And for the same reasons set out in the order denying the preliminary injunction, the Court finds the Governor's actions are not contrary to federal law. This matter must be dismissed.

**I**

Plaintiffs are previously appointed Board members of the Kentucky Board of Education. [R. 1-5 at 7.] After taking office as governor on December 10, 2019, Governor Andy Beshear issued Executive Order 2019-002. *Id*. at 13. This Executive Order abolished the Kentucky Board of Education created by KRS § 156.029, eliminating the position of any board member

serving at that time. *Id*. at 13–14. Next, Governor Beshear, by Executive Order 2019-002, created a new Board and appointed eleven new members, which are named Defendants to this action. [R. 12 at 2.] The Executive Order also appointed an active teacher, the Secretary of the Education and Workforce Development Cabinet, and the President of the Council on Postsecondary Education as *ex officio* nonvoting members. *Id*.

The next day, Plaintiffs and three additional previous board members filed a complaint against Governor Beshear and Lieutenant Governor and Secretary of Education and Workforce Development Jacqueline Coleman in Franklin Circuit Court. *Id*. at 2–3. In the state court action, Plaintiffs argued that Executive Order 2019-002 was a violation of the Kentucky Constitution, and sought to have it declared void. *Id*. at 3. Plaintiffs moved for injunctive relief, asking the Court to enjoin the new Board created under that Order from taking any action. *Id*. Plaintiffs also moved for a temporary restraining order and a temporary injunction. *Id*. The Franklin Circuit Court heard oral argument from both parties and ultimately denied all motions, "holding Plaintiffs had failed to demonstrate a substantial question given the Supreme Court's recent holding in *Beshear v. Bevin*, 575 S.W.3d 673 (Ky. 2019)." *Id*.

One day later, Plaintiffs moved for emergency interlocutory relief from the Kentucky Court of Appeals. *Id*. This was denied for the same reasons identified by the lower court. *Id*. On the same day, Plaintiffs appealed the order denying emergency relief to the Kentucky Supreme Court. *Id*. The Kentucky Supreme Court unanimously denied Plaintiffs' motion. *Id*.

On December 12, the new Board held a special meeting where its members were sworn into office and the Board announced the voluntary resignation of the Commissioner of Education. *Id*. Following the resignation, the Board named an interim Commissioner and started to conduct a national search for a new Commissioner. *Id*. Thereafter, the Board

continued to hold meetings.  *Id*.

After the Kentucky courts denied Plaintiffs' motion for injunctive relief, Defendants moved to dismiss the state court complaint and scheduled a hearing on January 15.  *Id*. Thereafter, Plaintiffs sought to continue the hearing after a change of counsel, and the hearing was rescheduled for January 29.  *Id*. at 4.  However, before the hearing, Plaintiffs voluntarily dismissed the state court action on January 17.  *Id*.

On the same day, a new group of Plaintiffs consisting of the previous Board members filed the instant action against Defendants pursuant to 42 U.S.C. § 1983.  [R. 1.]  First, Plaintiffs allege that the Governor's actions consist of procedural and substantive Due Process violations because he fired the previous Board members without cause.  *Id*. at 16–20.  Plaintiffs also seek a declaration on the constitutionality of KRS § 12.028 and whether it violates the separation of powers doctrine of the Kentucky Constitution.  *Id*. at 21.  Finally, Plaintiffs seek a "declaration of the constitutionality of Governor Beshear's action in suspending [KRS] 156.029 and [KRS] 63.080 when he fired the Plaintiffs without cause as required by the state constitution."  *Id*. at 25.

On February 3, Plaintiffs filed a Motion for an Emergency Preliminary Injunction.  [R. 7.]  Plaintiffs were seeking "to enjoin those appointed to [the] State Board of Education in Beshear Executive Order 2019-002 from taking any further actions until an adjudication of the merits of this action."  *Id*. at 1.  After considering the arguments presented at the hearing and through briefing, this Court denied Plaintiffs' motion, concluding that Plaintiffs are unlikely to succeed on the merits in this case.  [R. 20.]

Now, Defendants have filed Motions to Dismiss based on the same arguments.  [R. 10; R. 14; R. 19.]  On April 15, Plaintiffs' counsel filed a status report updating the factual posture that has taken place since the denial of the preliminary injunction.  [R. 29.]  Prior to the General

3

Assembly's adjournment on April 14, the Senate confirmed all of the following board members named in Executive Order 2019-002, except David Karem. *Id*. at 2.[1]

## II

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may assert lack of subject-matter jurisdiction as a defense. A motion to dismiss under Rule 12(b)(1) is different from a motion to dismiss under Rule 12(b)(6) because it challenges the Court's power to hear the case before it. When jurisdiction is challenged under this rule, the burden is on the plaintiff to prove jurisdiction exists. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). In answering this question, the Court is "empowered to resolve factual disputes" and need not presume that either parties' factual allegations are true. *Id.*

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a plaintiff's complaint. In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). The Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must

---

[1] In their status report, Plaintiffs argue that confirmation by the Senate is not enough to confirm the board members because the House of Representatives failed to confirm them. [R. 30.] Plaintiffs insist that KRS § 11.160(2) governs the process for gubernatorial appointments and requires confirmation by both the House of Representatives and Senate. *Id*. However, the Supreme Court of Kentucky has previously held bicameral confirmation is unconstitutional, as Section 93 of the Kentucky Constitution permits only the Senate to confirm nominees. *Fox v. Grayson*, 317 S.W.3d 1, 6–20 (Ky. 2010). Thus, the Senate alone has the constitutional confirmation power under Section 93 of the Kentucky Constitution. *Id*. at 11. Plaintiffs status report does not change the outcome in this matter. Thus, the Court need not consider these additional facts and arguments in regard to the pending Motions to Dismiss.

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *see also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009).

**A**

Defendants' first argue that dismissal is necessary because the Plaintiffs' claims do not adequately invoke the jurisdiction of this Court. [R. 10 at 4.] The initial issue before the Court is not whether the Defendants' actions violated Kentucky state law, but whether the case presents a question of federal constitutional law. Plaintiffs argue that this Court has "federal question" jurisdiction over this matter pursuant to 28 U.S.C. § 1331 which provides that this Court "shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." [R. 1-5 at 4.] The Court has already discussed this issue in an order denying Plaintiffs' Motion for Preliminary Injunction and incorporates the same discussion and conclusion.

The fact that the federal claims are brough pursuant to 42 U.S.C. 1983 does not change the result. As always, the Court must determine whether Plaintiffs' claims "arise under" federal law. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 7, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003). "'A suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution.'" *Id.* (quoting *Louisville & Nashville R. Co. V. Mottley*, 211 U.S. 149, 152, 29 S. Ct. 42, 53 L. Ed. 126 (1908)). A civil rights action under 42 U.S.C. § 1983 for alleged violations of the Fourteenth Amendment is certainly one that is based upon the laws of the United States.

However, that does not end the Court's inquiry.

A claim under a federal statute does not give the court federal question jurisdiction if it is "so attenuated and unsubstantial as to be absolutely devoid of merit." *Hagans v. Lavine*, 415 U.S. 528, 537, 94 S. Ct. 1372, 39 L. Ed. 2d 577 (1974); *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) ("[A] district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion."). "To be obviously devoid of merit, an alleged constitutional claim might represent an attempt to obtain federal question jurisdiction by the mere assertion of a frivolous connection between the constitution and the subject matter of the dispute, or the alleged claim might simply be immaterial to the real controversy." *Garvin v. Rosenau*, 455 F.2d 233, 239–40 (6th Cir. 1972) (citing *Bell v. Hood*, 327 U.S. 678, 66 S. Ct. 773, 90 L. Ed. 939 (1946)).

Plaintiffs state that this Court has subject matter jurisdiction because they have claimed violations of their constitutional right to substantive and procedural due process of law under the Fourteenth Amendment to the U.S. Constitution. [R. 1-5 at 4.] They are right about the jurisdictional foundation, but wrong about the constitutional law. Plaintiffs have not asserted a viable claim under the Fourteenth Amendment because they have no property or liberty interest in an appointed state office.

**1**

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Plaintiffs primarily allege failure by the Defendants

to provide adequate procedural and substantive due process when the Governor abolished the entire Board, ultimately terminating all members before their term was completed. [R. 7 at 7–8.] As the Sixth Circuit explained in *Howard v. Grinage*, 82 F.3d 1343, 1350 (6th Cir. 1996), "substantive due process prohibits the government's abuse of power or its use for the purpose of oppression, and procedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards."

a

The procedural component of the Due Process Clause protects rights created by state law and guarantees that no significant deprivation of life, liberty or property will take place until notice has been provided and the individual has a meaningful opportunity to be heard. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). In *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989), the United States Supreme Court stated:

> We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State, *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571, 92 S. Ct. 2701, 2706, 33 L.Ed.2d 548 (1972); the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient, *Hewitt v. Helms*, 459 U.S. at 472, 103 S. Ct. at 871, 74 L. Ed. 2d 675. The types of interests that constitute "liberty" and "property" for Fourteenth Amendment purposes are not unlimited; the interest must rise to more than "an abstract need or desire," *Board of Regents v. Roth*, 408 U.S. at 577, 92 S. Ct. at 2709, and must be based on more than "a unilateral hope," *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 465, 101 S. Ct. 2460, 2464, 69 L.Ed.2d 158 (1981). Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it.

*Thompson*, 490 U.S. at 460.

A public employee is entitled to procedural due process—including the opportunity for a hearing—and substantive protections if he stands to lose a constitutionally protected property or liberty interest. *See Loudermill*, 470 U.S. at 538. Such a property interest arises from a

7

"legitimate claim of entitlement" to continuing employment. *Roth*, 408 U.S. at 577. Thus, in order to establish due process protection, a "plaintiff must, as a threshold matter, establish that he had a protected property interest in his continued employment entitling him to due process protection." *Blazy v. Jefferson Cty. Reg'l Planning Comm'n*, 438 F. App'x 408, 411–12 (6th Cir. 2011) (citations omitted).

Analysis of state law determines whether an employee possesses a property interest in continued employment. *See Roth*, 408 U.S. at 578 ("[Property interests] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlements to those benefits.") Moreover, a "property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances." *Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 565 (6th Cir.2004) (citations omitted). In this case, the Court must look to Kentucky law and to the terms of the Plaintiffs' employment to determine whether members had a "legitimate expectation of continued employment." *Johnston—Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir. 1990).

But the Plaintiffs here are not really employees. Instead, they are political appointees and more akin to public officers. Plaintiffs respond that they have a property right in their board positions because they received a per diem and reimbursement for out-of-pocket expenses incurred by their service. [R. 21 at 4–5.] However, this fact is irrelevant since the plaintiffs in the controlling cases received compensation, but they still did not have property interests in their public positions. The Supreme Court has explicitly held that public officers do not have a property interest in the positions they occupy. *Taylor v. Beckham*, 178 U.S. 548 (1900). The case involved an election for Kentucky's governor and lieutenant governor. *Id*. After the

8

Republican candidates had been declared the winner, the Democratic candidates contested the results and were later declared the winners. *Id*. When the Republican candidates refused to surrender their positions, the Democratic lieutenant governor candidate filed suit. *Id*. The Republicans argued that depriving them of their elected offices would be depriving them of "their property without due process of law." *Id*. at 557. Kentucky's highest state court held that the case did not assert a Fourteenth Amendment claim because the right to hold office was not a property right. *Id*. at 575.

The Supreme Court declined to exercise jurisdiction over the case, stating that "[t]he view that public office is not property has generally been entertained in this country." *Id*. at 576. The decisions are numerous to the effect that public offices are mere agencies or trusts, and not property as such. Nor are the salary and emoluments property, secured by contract, but compensation for services actually rendered." *Id*. at 577. The fact that

> a constitution may forbid the legislature from abolishing a public office or diminishing the salary thereof during the term of the incumbent [does not] change its character or make it property. True, the restrictions limit the power of the legislature to deal with the office, but even such restrictions may be removed by constitutional amendment. In short, generally speaking, the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right.

*Id*. The Supreme Court later reaffirmed its holding in *Taylor*, stating that "[m]ore than forty years ago this Court determined that an unlawful denial by state action of a right to state political office is not a denial of a right of property or of liberty secured by the due process clause . . . we reaffirm [that decision] now." *Snowden v. Hughes,* 321 U.S. 1, 7, 64 S. Ct. 397, 88 L. Ed. 497 (1944).

Plaintiffs complain that they were removed from office and deprived of their positions as Board members without cause. They assert that the Governor's actions through Executive Order 2019-002 deprived them of a property interest protected under longstanding statutes, *i.e.* the

9

protection that "a board member shall only be removed for cause," under KRS § 156.029(2), and KRS § 63.080(2)(b), which states "members of the Kentucky Board of Education … shall only be removed except for cause." [R. 7 at 4.]  In essence, the Board members believe state law grants them certain procedural rights.

However, Governor Beshear did not simply remove the members from a state office. Rather, he exercised his authority under KRS § 12.028 to reorganize the state government in a manner that abolished their state offices.  [R. 12 at 12.]  This power is conferred to the Governor by the General Assembly and was recognized as a lawful executive function by the Kentucky Supreme Court.  *See Beshear v. Bevin*, 575 S.W.3d 673 (Ky. 2019).  This statute provides that the Governor may temporarily reorganize "organizational units and administrative bodies" when the General Assembly is not in session "to achieve greater economy, efficiency, and improved administration …."  KRS § 12.028(2).  Such reorganization can include "the creation, alteration or abolition of any organizational unit or administrative body and the transfer of functions, personnel, funds, equipment, facilities, and records from one (1) organizational unit or administrative body to another."  KRS § 12.028(1).  Therefore, since the Governor abolished the entire Board, the statutory "cause" requirement was not implicated.

**b**

What about substantive due process rights?  The fact that Plaintiff was not entitled to notice and an opportunity to be heard does not necessarily foreclose a substantive due process claim.  The substantive component of the Due Process Clause protects fundamental rights created by the United States Constitution.

Fundamental rights are those specifically guaranteed by the United States Constitution and those rights that are "implicit in the concept of ordered liberty."  *Palko v. Connecticut*, 302

U.S. 319, 325, 58 S. Ct. 149, 82 L. Ed. 288 (1937). These generally include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 117 S. Ct. 2302, 138 L. Ed. 2d 772 (1997) (internal citations omitted). Substantive due process rights have been specifically defined by the United States Supreme Court, and do not include the right to maintain employment, public or otherwise. *See Seal v. Morgan*, 229 F.3d 567, 574–75 (6th Cir. 2000).

In *Ramsey v. Board of Education of Whitley County, Kentucky*, 844 F.2d 1268 (6th Cir. 1988), and in *Charles v. Baesler*, 910 F.2d 1349 (6th Cir. 1990), the Court held that a breach of contract by a public employer does not give rise to a claim by its employee under § 1983 for a denial of substantive due process. Moreover, in *Sutton v. Cleveland Board of Education*, 958 F.2d 1339, 1351 (6th Cir. 1992), the Court held that a claim by a public employee for improper discharge from employment cannot be brought under the substantive due process component even though the employment contract provides that the employee could only be discharged for just cause. As noted, if those rights do not exist for employees, they certainly do not exist for political appointees. Therefore, Plaintiffs' substantive due process claim lacks merit as a matter of law.

### 3

The only remaining claims seek a declaration that the state laws in question in this case violate state law. To the extent a federal court even considers such claims, it does so by following state law. And here, the Kentucky Supreme Court has already held that KRS § 12.028 does not violate Kentucky's constitutional separation of powers. *See Beshear*, 575 S.W.3d at 681–84. Plaintiffs argue that *Beshear v. Bevin* does not apply in this case because the facts are

clearly distinguishable since the former Governor did not use the challenged statute to cause any members of the Board to lose their position. [R. 17 at 1–2.]

However, Attorney General Beshear's constitutional challenge to the statute in that case was exactly the same as the one raised by the Plaintiffs here. Plaintiffs argued that KRS § 12.028 violated Kentucky's separation of powers doctrine by unconstitutionally shifting legislative power from the General Assembly to the Governor. *Beshear*, 575 S.W.3d at 681. The Kentucky Supreme Court ultimately rejected this claim and held that "neither KRS § 12.028 nor [the executive order] constitutes an unconstitutional delegation of legislative power." *Id*. at 684. The Court explicitly stated, "KRS § 12.028, which allows the Governor to change the makeup and functions of those boards—even going so far as abolishing existing boards and creating new ones—is a grant of legislative authority to the executive department." *Id*. at 682. While the Supreme Court recognized that "[t]here may be a point" at which a Governor's particular use of the statute violates the [state] Constitution, the statute itself is not facially invalid, which is exactly the same issue Plaintiffs are asking this Court to decide. *Id*. Therefore, *Beshear v. Bevin* is the authoritative precedent on the issue of whether KRS § 12.028 is facially constitutional, ultimately allowing the Governor to abolish and reconstruct education boards in Kentucky.[2]

---

[2] The Governor also avers that the Court should abstain from exercising jurisdiction in this case pursuant to the *Pullman* abstention doctrine. Under *Pullman*, a federal court must abstain from hearing "cases in which the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716–17, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996) (citing *Pullman*, 312 U.S. 496, 61 S. Ct. 643, 85 L. Ed. 971. However, the factual predicate here is not traditionally the context where the abstention doctrine is implicated since there are no unsettled questions of state law pending in this matter.

## III

The Court remains unpersuaded that this case presents a federal constitution or statutory violation. Thus, this Court cannot grant Plaintiffs the remedy they seek because Plaintiffs have not asserted a claim that is within the jurisdiction of this Court. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Defendants' Motions to Dismiss [**R. 10; R. 14; R. 19**] are **GRANTED**. This matter is **STRICKEN** from the Court's active docket.

This the 10th day of June, 2020.

Gregory F. Van Tatenhove
United States District Judge